The panel has a total of four cases, one of them that will be submitted on the briefs today without a formal argument. That is Appeal No. 2007-1298, Maxwell v. Stanley Works. On the brief case argument, let's start with your argument first. In 2007-1023, Finisar Corporation v. DirecTV Group. Good morning to you, Chief Judge Rochelle, and may it please the court. The judgment of this case should be reversed. As to the $25 million enhanced damages penalty, the award should be reversed because DirecTV's actions were not objectively reckless under the standards set forth by this court. The judge's remark that Finisar Anticipation case was one that he found very, very close, very close, and that's a quote from the district judge, should establish beyond any doubt that that $25 million penalty got standing. But our arguments are not just objectively reasonable ones, they're correct ones, and that means the entire liability judgment should be reversed. Let me start with the infringement questions, and because there are a lot of issues in this case, I'm going to pare down a little bit and try to talk about some of them. Counsel, why don't we start with Anticipation, if you don't mind? Sure. I'd like to talk about the video text reference in particular. Sure. And its disclosures on 175 and 176. Hopefully you have those handy. And my understanding is that the major contention that Finisar has with whether or Is that right? Is that your understanding as well? That's my understanding. In fact, I would add to Judge Moore that they've applied a level of rigor to their anticipation arguments that disappears when they make their infringement arguments. But yes, that's my understanding. Okay. And is my understanding correct that one of you tell me on page 175 what it is you'd like me to focus on, and do the same on 176, figure 10.5, that you think discloses the scheduling with regard to tiers and prioritization, which I understand could be a point of contention that they raise. Right. With regard to, and I think, more specifically, I think, their argument is that we don't disclose multiple tiers of scheduling. And I think on 175, you'll see a reference to both pages of general interest that are repeated in a short cycle on the one hand, and the less important pages that are inserted in hourly or even daily intervals on the other hand. So that's clearly disclosing both multiple tiers as well as prioritization. Similarly, on page 175, and that's 24174 of the record, you'll see references to the schedule of the normal broadcast cycle on the one hand, and the scheduled offline pages on the other. Now, if you turn to the illustration on page 176, and that's at 24175, you'll see at least two fixed wheels. That's, Judge Moore, that's these two wheels right here. And so I assume that what he pointed us to is the same thing that Dr. Tuchin- Jaden. Jaden? There's the T asylum. It's Dr. Jaden. Jaden. The same thing that Dr. Jaden did in his testimony, which is to the very far right-hand side of that right-hand circle offline page cycle, there's one slot for revolution of the online cycle. So that's your argument that that figure, I understand, discloses different transmission rates, right? Right. Because one of them is going a single click, and the other one's going all the way around. Right. One click per rotation of the big wheel in the middle. So you've got multiple tiers, tiering different rates. And is it true that the only contrary evidence that you put on Dr.- Jaden. Thank you. Dr. Jaden. And I read his testimony. Is the only contrary evidence, Mr. Eaton, is it right that their other expert only testified on infringement and didn't testify on anticipation? That's my recollection of the record as well, Your Honor. And your argument with regard to Mr. Eaton's statements that he doesn't believe this discloses the claim elements are what? Well, Mr. Eaton, as we pointed out in our briefs, applied and read into this document what he said UK Teletext does. He said that UK Teletext was inherently variable. It didn't really cycle the way that the Videotext Architecture Treatise taught the cycle. Well, in that regard, Judge Moore, I point you to page 59 of the textbook, which I think, if my notes are correct, is at page 824-056. And the reason I point you to that is that Dr. Gekse, we have lots of interesting names in this case, Dr. Gekse, who wrote the Videotext Architecture Treatise, pointed out there that, and I quote here, the hallmark, the hallmark of UK Teletext is its synchronous method of transmission. And he discusses in that area asynchronous methods, the sort of methods that might cause. So what Mr. Eaton did in this case, and that's important because as he admitted, he didn't meet the level of ordinary skill that had been defined by the court. But put that aside, what Mr. Eaton did is said, I don't care what's in the reference. I know how Teletext works. And that's not appropriate for anticipation analysis. And was that the only, was Mr. Eaton the only evidence that they offered to contradict this document and whether or not it proves obvious, or was there anything else? Again, I'm hesitant to speak for my opposing counsel, but my recollection of the record, that is correct. You may have a theory that's otherwise, but that is my recollection of being in trial. Why isn't Eaton one of ordinary skill in the art? I mean, certainly you would agree that real world experience can satisfy an educational department, right? I mean, if somebody has been doing something for 20 years, programming software computers, the fact that they don't actually have the degree and, you know, what does the district court say? You know, a BS in computer science plus two years of experience, and somebody's got 20 years on the job, software programming, they never got a degree, they're one of these whiz kids that didn't need to. I mean, you wouldn't argue under those circumstances that that person didn't qualify as one of ordinary skill. Oh, I think I would, Your Honor, because I think that's a job for the district court to do when the district court is defining the level of ordinary skill in the art. Did you make a motion to eliminate or exclude Dr. Eaton as unqualified? No, because we're not claiming, we've never claimed that he couldn't give relevant testimony because of that fact. This court has cases that say that people who are not of ordinary skill can nonetheless give admissible testimony. But the point, I bring the court back to the main point, Your Honor, and that is that Mr. Eaton did not read the reference. He read in something from his own experience that was actually contrary to it. Whenever he was presented with a reference in the book, and it was a difficult one, like this 24, 174, and 175, the pages 175 and 76, he would say, I don't need to read that, teletext is variable. That's the way it is. It just is. And that's not correct for the anticipation. You have a minimum of three minutes to request an infringement. Would you return to that? I will, and let me just make one more point with regard to invalidity, and that is that this judge did not have the benefit when he ruled on our J-ball motions of the KSR decision. And he denied our J-ball motion for one reason only, and that is the absence of a motivation to deny it. We say that it's very clear that the references that we've cited, if there is any gap out of videotext architecture whatsoever, it is a predictable use of even older art, like the Biggs' Barnaby reference with regard to time stamps. If that's not actually in videotext architecture, then it's at least obvious in light of Biggs' Barnaby. We have a case here where this patent has been construed by another district court. What advice would you give us on weighing this claim construction versus the other district court's claim construction on the same terms? Well, and let me turn to the infringement analysis, because there are really two parts I'd like to address. Answer my question. Yes. Well, that question goes specifically to the judge Allison's construction of the complex. With regard to downloading, in particular, where he's recently constructed a time stamp. Capable of being held in this computer storage. And that, Judge Rader, is much more on point with the construction we offered below. And to what extent do you think we can consult that when we're dealing with a different claim construction by a different district judge? Well, I think it's obviously not binding on this court, but the court, we do give the court notice that there are these related cases, and I wanted to make sure that the court was aware that there's this other construction out there. What advice can you give? I don't know that there's a case for collateral estoppel or race judicata with regard to certain construction. And I think what's happening in these cases is that the courts are waiting for this court's pronouncement with regard to infringement and with regard to claim construction. And so when we get to the first case, you think maybe we ought to consult the second? No, I think what I'll point out with regard to the second case is that the second case does reach a result that's different from Judge Clark's result in this case. It's some evidence, some persuasive evidence for the court that our construction is correct with regard to download. Okay, let me try to turn to the infringement analysis because there were two points that I wanted to address. Using the library analysis that comes up in column two with the patent under the claim construction, which the judge has put forward, how does it square with that library analogy? How does the claim construction square? It doesn't because the judge's claim construction was a collection of computerized information which can be accessed, and that's almost to say computerized information, not much more than that. It's not fixed, it's not finite. I've allowed this end extreme turnaround programming for NTDs to count toward infringement. Since I'm now getting into my rebuttal time, let me try to very quickly sketch out the non-infringement argument. With regard to claim 16, in particular element C, the schedule and transmission of selected portions element, the district judge construed the term said selected portions appearing in the second portion of the scheduling step as each part of the information database selected for transmission. As we pointed out in our brief, we don't schedule each selected portion for transmission. We don't assign scheduled transmission times to most of our databases. Most importantly, we don't schedule it for Judge Rader, the what's called turnaround programming, stuff that comes from CNN, USA, Food Network. But you admitted you did it for 3%. For 3%, that's right. If I could just very quickly walk over here, I'm told that the amplification is good enough here. Let me show you the problem with that. That's with regard to the downloading construction. The problem is, with my opposing counsel's permission, drawn on this claim chart, the each selected portion up here must then match up down here with the same downloaded data packets. The portion that we do schedule is pay-per-view programming. That is programming that, like turnaround programming, is just beamed through the air. It's not downloaded under our construction of that term requiring retention. Unless the Court has further questions, I'll turn for rebuttal on this and the response to... Good morning, Your Honors. May it please the Court, I'm Larry Laycott, with the Board of the Madigan Firm on the Claim on behalf of Minnesota. With respect, first, to the anticipation issue, going specifically to the video text references, the anticipation conclusion that there is no invalidity must stand for at least three independent reasons. Going to that reference itself, the appropriate standard review provides that every single reading of that document must demonstrate anticipation. Even the reading that we've heard today only shows multiple, if anything, tiers, but not scheduling of multiple tiers. There are many readings which allow for other interpretations which, under the standard review with all inferences, in favor of FINISAR, would result in a finding of no anticipation. Let's look at page 175. You have a lot of your argument regarding this paragraph. A few hundred pages of general interest can be repeated in a short cycle, whereas less important or less frequently updated pages are inserted in hourly or even daily intervals in specific slots in the cycle, or according to a predetermined schedule. You have a lot on your argument that according to a predetermined schedule only modifies the second, i.e. the less important or less frequently updated pages, and not the first. Isn't that right? The reasonable reading that we advocate, and this is just one, there are other reasonable readings that would result in a finding of no anticipation. You see this is stated in the disjunctive. You have hourly or daily or, another disjunctive, the scheduled. It can't be both hourly and daily. If it's hourly, it's not daily. If it's daily, it's not hourly. These are independent and exclusive applications. Well, hourly or daily pertains right to the schedule, whereas less important or less frequently updated pages. That's not referring back to the pages of general interest that are transmitted in a short cycle. Correct. But even if we get to that point, there's still only one scheduled tier, Your Honor, and they're all stated in the disjunctive. That's a reasonable reading. No, that's only if a predetermined schedule applies only to the second clause, not the first. The very case that you cite where you suggest that this case shows that the last clause according to a predetermined schedule wouldn't apply in hydrates and chemical case, if you were to actually look at that case, they make much of the fact that there is no comma before the final clause. In fact, they refer to a bunch of textbooks and treatises on statutory construction, all of which I have here in front of me, and every one of which actually highlights as if there's a comma preceding the last phrase and it refers back to both. Yes, one reasonable reading of that is that the predetermined schedule... No, none of them suggest that grammatically, none of them suggest that it would ever be appropriate grammatically if there's a comma to suggest it doesn't apply back to both. They all say the exact opposite. So how could it be a reasonable reading when it's inconsistent with grammatical and English language construction? It would not be inconsistent with grammatical construction to have a reasonable reading of two scheduled tiers in this particular instance for the reason that the predetermined schedule can modify the less important pages under a grammatical construction. That's not what all of the texts that you cited actually say when you go straight to them. Every one of them says that the presence of that comma under English language suggests that the or according to a predetermined schedule refers back automatically modifying both. When the inferences are all taken in a line most favorable. There's grammar strung in white. This is English language. Rules of construction. Just a little bit. If the major difference between videotech and acclaimed invention is simply a difference between retrospective versus prospective time markings why isn't that obvious? Well because the overarching goal of JXE when it describes teletext is to accomplish the transmission of the most possible material within the shortest period of time. To have multiple schedules would be a disruption and undesirable according to that system. But more importantly with respect to obviousness here your honor the problem really exists in that there's never been a prima facie case made for obviousness. In fact that is why the direct TB expert didn't even allege that these elements were all present. But as close as we are on anticipation and it's just a matter of was it prospective or retrospective or predetermined why again why wouldn't one of skill in the art be able to deal with that minor difference? Well if that were the only difference that might be an issue your honor but with the anticipation question that we're discussing with Judge Moore and the obviousness question remember that line of argument only goes to claim 16 there has never even been an anticipation argument made with respect to claim 17 there's never a showing of the time stamp therefore we have seven infringed claims here and under those circumstances there's no anticipation of claim 17 or the other claims that depend from claim 16 because they have different factors that are never shown upon reasonable readings of this text so we don't even have a... ...database why isn't that database automatically going to have some searchability and retrievability isn't the district court's interpretation here unduly broad? It is not for a number of reasons your honor but even a database has to be something you can identify and get something out of not just something that is floating in the ecosphere there somewhere is it? Well the dictionary definitions of database only 4 of 14 even mention searchability and retrievability but interestingly your honor if we impose searchability and retrievability upon the construction of the... I'm talking about what a skill in the art deals with it and what a skill in the art I have a feeling says a database is something that has a way of getting a specific item out of on command well that certainly occurs here the substantial evidence of record would demonstrate that even if you were to impose that searchability and retrievability obligation then there's still the possibility under the substantial evidence test to prove an infringement because that is accomplished under the direct TV system returning once again to the obviousness... I'm talking about downloading isn't that something that's there perpetually that you can go back and get at any time? It is not your honor under the definitions that would have been applicable in the appropriate time frame in 1991 as this court saw plain meaning in 1991 was clearly consistent with the courts construction of transferring it's also consistent with all of the dictionary definitions all 7 in fact none of the dictionary definitions advocated by direct TV support those construction but even if that construction were... You're saying just at least in column 11 inferences that downloading is more than just receiving a signal. The patent also teaches that downloading is consistent with downloading to into RAM for example I draw the courts attention to column 5 where filter data is downloaded into memory 122 dash 124 RAM figure 4 shows the same thing column 8 at line 41 and column 11 at line 55 also show that downloading can be the type of downloading excuse me the way I'm reading your interpretation of it is the reception of it is the downloading yes and even under circumstances if for example retains for later life or pardon me for later use even if direct TV secures a construction that provides for that later use there is no limitation on the time for retention and under the circumstances of this case direct TV's set-top boxes transfer requested packets to a memory storage device and therefore determined that those requested packets were transferred to device and that would satisfy the claim limitations for improvement likewise if it were stored for non-fleeting or non-transient that too is accomplished and there are numerous evidences substantial evidence in the record that we can point to that demonstrate that that is the case in fact other types of data such as program data are maintained in RAM for a longer period than is required to process and display now what would you tell us we're reviewing a case for the claim construction here but the same fact has been construed by a different district judge can we take that into consideration here can we look at the Comcast case shouldn't we it's unnecessary because even if under the Comcast well part of the purpose of this court is to achieve uniformity in interpretation across the board for packets why wouldn't we consult the other one it's if the whole of this court could consult that however your honor I believe that the same result would be required and that is a finding of infringement remember the language there is capable of and certainly capable of it finds its way into the application of the PLTV system I'd like to move to the cross appeal for a moment if I might can I ask you just one question I want to make sure I understood your argument on anticipation and it was even if I disagree with you with regard to 16 you said 17 was also found to be infringed and I just want to make sure I understood what your argument was with regard to 17 well first of all there are six additional claims the arguments that were addressed in the context of pages 175 and 176 go specifically to claim 16 and the scheduling step however there is never any evidence of a time stamp that is there is reference to a time code but that is always and a fair reading of that document is that that time code travels with the transmission and arrives simultaneously which does not meet the claim limitation in claim 17 of will be received so you have to know in advance from that time stamp when the information will be received so you'll know when to view it that's never been shown the same is true with all of the rest of the remaining infringed claims there are not validity positions which would overcome those claims and for that reason anticipation isn't appropriate I'm looking at the video text reference where it talks about the time code and you don't disagree that that is a time stamp of sorts you just say it's not it doesn't meet the claim elements because why well the reasonable reading of the anticipation argument on claim 17 is that the time code is what it's referred to not a time stamp in the sense of claim 17 you'll see from the text itself it says that it's not it can be described and not have any meaning in terms of time but it also is a time code that simply travels with and appears at the time of transmission simultaneously with display so it's not meeting the limitations of claim 17 will be received now moving for a moment if I can to the cross appeal in this action your honor your honors there is irreparable harm for the reason that the court failed to assess the adequacy of the remedy under the supreme court rule here we have a monetary remedy that is not as certain as injunctive relief there was an additional error with respect to the first two factors for the reason that the court improperly reasoned that non-practicing status was relevant to abutting this issue of irreparable harm those two factors when combined with the courts additional errors on the balancing of the hardships demonstrates that the balance of hardship should weigh heavily in favor of Finisar first there was a failure to recognize irreparable harm to Finisar in the form of the lack of certainty necessary on the remedy also the lower court improperly found that would be true of every single case and if we acknowledge that it would be back to the general rule of a injunctive relief every time there was a finding of infringement not every single case your honor there are cases historically for example where the true value of a license can be achieved through the process of negotiation for example in the parties agree that is one instance another instance for example would be the situation where there are for example 20 existing licenses that are some certain that would be something that we could determine is a certain monetary remedy under the circumstances of this case there is no certainty on the level of an injunction and for that reason according to the Supreme Court test which was never first of all was never even made and for that reason it must be viewed as an error moving through the case of case recently released suggests that at least there's going to be some acknowledgement of the ebay case and we're not going back to the general rule you seem to be sending us not going back to a general rule where extraordinary circumstances are necessary your honor I'm simply saying that in this case the four factors are satisfied when properly reviewed they were not properly reviewed and errors committed at each level on each of the factors in the court below in this case and certainly there is irreparable harm that must be weighed in the balance in terms of the lack of certainty with respect to the monetary remedy I understand your honor move briefly to enhancement enhancement here is appropriate and I address willfulness in the same context we have substantial evidence of willful infringement in this case and there are a number of reasons why this is not a close case in terms of willfulness here the claims instructions that have been proposed even if accepted would result in infringement that's not a close case in this case the scheduling is admitted that's the only infringement issue that is challenged there was not even a prime efficient case of obviousness in this case and anticipation is defeated and there weren't even anticipation arguments that were viable advanced on at least six of the infringed claims that's not a close case this is a case where enhancement is appropriate and the lower court failed to provide any valid reason why that was not the case didn't the district court say it was a very very very close case on anticipation and those three barriers are hit it's not my line yes of course this court does not review opinions they review judgments and I see that my time has expired I hope to reserve some for rebuttal but in response to that your honor the close case was in the same context of the scheduling issues as it relates to claim 16 there was never a close case with respect to time stamps in the remaining dependent claims that were found to be infringed and under those circumstances it is not a close case it was certainly not a close case at the time of filing it was not a close case at the conclusion after all of the defenses were rejected there's ongoing willful infringement without any valid reason thus justifying enhanced damages Thank you Chief Judge I'll be very brief Judge Moore with regard to your questions regarding the time stamp of claims 17 and 39 I'm not quite sure why it's not disclosed in video architecture treatise but if it's not there it's either obvious from the treatise as a single reference of obviousness or in combination as I mentioned with the Biggs and Barnaby reference you can see time stamps that will tell you that you can use to summon up a page in the future 23958 and 23960 that's what Mr. Laycock says is missing that's clearly there it's a 1974 reference anyone would look to that it's exactly the same line. Judge Rader with regard to the comments that were made to you regarding the dictionary definitions of database I think if you look at the I think my friend said 4 out of 14 used searchability I think if you look at the rest of them you'll see the same concept used there as well and I think the same problem Judge Rader you identified with regard to database is present with regard to downloading argument that's been made against us under the construction that Mr. Laycock wanted and got at trial he said he wanted the or immediate turnaround well that was clearly intended to go snatch DirecTV and put it under the patent because it's got this pipeline of programming coming and that's not downloading if that's downloading then I am downloading a phone call from my wife whenever a phone call comes in on my cell phone and it's processed through a buffer and I listen to it in real time but that's not downloading it wasn't downloading in 1991 and it's not downloading now with regard to the points that were made with regard to cross appeal I think the court understands our position I don't see anything to add to the court's questions unless the court has questions for me Thank you Thank you